WAYNE W. HEROLD, APPELLANT, v. CONSTRUCTORS, INC., APPELLEE.

271 N. W. 2d 542

Filed November 15, 1978. No. 41932.

Hoch & Steinheider, for appellant.

Cline, Williams, Wright, Johnson & Oldfather, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH,

McCown, Clinton, Brodkey, and White, JJ., and Kuns, Retired District Judge.

Brodkey, J.

This is an appeal from the Nebraska Workmen's Compensation Court. Plaintiff-appellant, Wayne W. Herold, was an employee of defendant-appellee, Constructors, Inc.; and on August 6, 1975, suffered certain injuries while engaged in the duties of his employment, as a result of an accident arising out of and in the course of his employment by the defendant.

The principal issue and dispute between the parties is pointed out in the opening paragraph of the briefs of the respective parties filed on appeal to this court. Under the heading "Nature of the Case," appearing on page 1 of appellant's brief, he states: "This is a case wherein the plaintiff injured his left *hand* in the course of his employment by the defendant and brought suit to recover benefits provided under the Nebraska Workmen's Compensation law." (Emphasis supplied.) In the corresponding paragraph of appellee's brief, it states: "This is a case wherein the plaintiff injured his left *thumb* in the course of his employment by the defendant and brought suit to recover benefits provided under the Nebraska Workmen's Compensation law." (Emphasis supplied.) In short, appellant claims that he should be compensated for his injuries on the basis of an injury to the hand, whereas appellee contends that the injuries suffered were to appellant's thumb only, and appellant should be compensated under the Workmen's Compensation Act on that basis.

The case was first tried July 29, 1977, before a single judge of the Workmen's Compensation Court, who determined that the plaintiff was temporarily totally disabled for a period of 69 4/7 weeks, from August 7, 1975, to December 5, 1976; that he sustained a 50 percent permanent partial disability to

his left thumb; and the judge also awarded plaintiff additional compensation for waiting time, and attorney's fees. On October 28, 1977, the matter was reheard before three judges of the Nebraska Workmen's Compensation Court, which court also found that the plaintiff was temporarily totally disabled for a period of 69 4/7 weeks from August 7, 1975, to December 5, 1976, and thereafter sustained a 50 percent permanent partial disability to his left thumb. The court made no award for waiting time compensation or attorney's fees. Appellant thereafter perfected his appeal to this court, assigning as error: (1) That the compensation court erred in not awarding the plaintiff 78 3/7 weeks of temporary total disability, representing the period of August 7, 1975, to February 4, 1977; and (2) the compensation court erred in not awarding the plaintiff 25 percent permanent partial disability to his left hand, rather than 50 percent permanent partial disability to his left thumb. He makes no assignment of error on appeal as to the action of the Workmen's Compensation Court in refusing him additional compensation for waiting time, and also an award of an attorney's fee.

It appears that Herold, while working for Constructors, Inc., on August 6, 1975, while cleaning a clogged pug mill, accidentally caught his left hand in a conveyor belt on the machine, as the result of which his left thumb was almost completely severed. Two operations were performed on his left hand by a Dr. Chester Q. Thompson, Jr., of Omaha, Nebraska, who is a specialist in reconstructive hand surgery. The cast on employee's left hand was removed on November 15, 1976. Dr. Thompson next saw Herold on November 29, 1976, and at that time, according to his testimony in his deposition, he recommended that Herold return to work the following week and come back to his office in 2 months for a follow-up examination. This is confirmed by a letter from Dr.

Thompson to appellee's insurance company, dated January 5, 1977, and received in evidence at the trial. Herold, however, testified that Dr. Thompson had told him on November 29, 1976, that he could return to "light duties." Dr. Thompson was questioned with reference to Herold's testimony that Dr. Thompson had told him on that occasion that he could return to light work and testified: "In referring to my office charts here, I have [sic] doing well, return to work and return also in two months for a checkup. I do not have light, heavy, normal work as part of the description. I honestly cannot recall, cannot tell the Court at this time. I assume I told him to return to his normal work, but I cannot be a hundred percent sure." In any event, at the subsequent appointment for the checkup, which occurred on February 4, 1977, appellant was given a complete release to return to work, and did so on March 1, 1977.

Thereafter, on April 1, 1977, Herold consulted Dr. Robert C. Weldon, Nebraska City, Nebraska, who examined him and gave his opinion at the trial that Herold's disability was a 25 percent permanent partial disability to his left hand. Dr. Weldon stated that his estimate was based upon the loss of the thumb function in the usage of the hand, and stated it was his opinion the thumb is such an integral part of the hand that if you lose the function of the thumb, you lose the function of the hand. He stated: "It seems shallow to consider the thumb as a single entity when it's the thing that makes our hand the valuable tool that it is, * * *." Dr. Thompson, who had rated Herold's permanent partial disability at 40 percent of the thumb, disagreed with Dr. Weldon's evaluation, but did state: "Injury to a finger always relates to the hand also. They cannot be separated because the fingers are essential to the total function of the other fingers and the entire hand, the thumb being the most important part of the hand be-

ing approximately 40 percent of the hand. Of course, it relates to the rest of the fingers and hand in unison." While it is undoubtedly true that an injury to a thumb does, to some extent at least, affect the entire performance of the hand, nevertheless, even the opinion of medical experts to that effect cannot change the express statutory provisions of the Nebraska Workmen's Compensation Law. Injuries to the thumb and to the hand are listed as separate specific scheduled injuries under section 48-121 (3), R. S. Supp., 1974. We have consistently held that where the effect of an injury to a finger only is the usual and natural one, compensation cannot be allowed for loss of use of the hand. Guerin v. Insurance Co. of North America, 183 Neb. 30, 157 N. W. 2d 779 (1968); Runyan v. Lockwood Graders, Inc., 176 Neb. 676, 127 N. W. 2d 186 (1964); Greseck v. Farmers Union Elevator Co., 123 Neb. 755, 243 N. W. 898 (1932). The same argument made by appellant in this case was also advanced and considered by this court in Runyan v. Lockwood Graders, Inc., *supra*; and we quote from the opinion in that case: "The general tenor of the medical testimony is that the loss of a finger is injurious to the functional use of the hand, the arm, and even the body as a whole. This view is based on the theory that an injury to a component part is injurious to the whole of which it is a part. That this is true as a general proposition cannot be questioned, whether or not there is an unusual or extraordinary condition present. But the workmen's compensation law disregards this theory in favor of an arbitrary distinction between injuries to fingers, the hand, or the arm. * * * The evidence in this case shows that the injury is to the fingers, it actually occurring to the middle phalanx of each finger. There was no injury to the hands, with the possible exception of one finger, which was amputated at the knuckle. The theory that the loss of use of a finger to some extent constituted the loss of use of the hand

has been dealt with by this court. In Greseck v. Farmers Union Elevator Co., *supra*, this court said: 'It is a matter of common knowledge that, when one's finger is severely lacerated and fractured, a consequential impairment of the usefulness of the hand follows, at least during the healing period. The same finger injury exerts a similar influence upon the arm, but in a lesser degree. In such cases, barring unexpected complications, the disability to the injured finger is greater than to the hand, and greater to the hand than to the arm, and in those states where workmen's compensation laws have been adopted, with classification of injuries and schedule of compensations similar to those in Nebraska, it is generally held that it is the disability to the injured finger, and not the consequential disability to the hand, which governs the compensation to the paid, and such in effect has been the holding of the court.' "

In the instant case there is no evidence in the record that plaintiff suffered any unusual or extraordinary injury to his hand, but only the generalization of the medical theory that an injury to a component part is an injury to the whole.

There is, however, a conflict in the evidence as to the date appellant's temporary total disability ended, as previously discussed. The compensation court found that the temporary total disability ended on December 5, 1976, 1 week following his examination by Dr. Thompson on November 29, 1976. At that time Dr. Thompson also testified there was no notation on his records of a limited release of any kind, as claimed by Herold.

In this connection, we point out that there is no longer any provision in our statutes for de novo review in this court of compensation cases, the statute having been amended in 1975. It now provides, among other things, as follows: "The findings of fact made by the Nebraska Workmen's Compensa-

tion Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was produced by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award." § 48-185, R. S. Supp., 1976. See, also, Inserra v. Village Inn Pancake House, 197 Neb. 168, 247 N. W. 2d 625 (1976).

It is clear in this case that the compensation court did not act in excess of its powers, that the award was not obtained by fraud, and that there is more than ample competent evidence in the record of this case to sustain the findings and award of the compensation court on rehearing. Its decree must be affirmed.

AFFIRMED.