James C. STUMPFF, Appellant,

v.

**SECOND INJURY FUND OF IOWA, Appellee.**

No. 94–1961.

Supreme Court of Iowa.

Feb. 14, 1996.

J. Richard Johnson of White & Johnson, P.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and James F. Christenson, Assistant Attorney General, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The sole issue raised on appeal is whether James C. Stumpff suffered a qualifying first injury for the purpose of invoking Second Injury Fund liability. The deputy industrial commissioner, the industrial commissioner, and the district court found Stumpff had not suffered a qualifying first injury. We agree. The district court's ruling is affirmed.

I. *Background.*

Twenty-one-year-old James C. Stumpff was injured on October 6, 1976 when his right hand was caught in the chute of a cement truck. He suffered a severe fracture at the distal aspect of the proximal phalanx. No other bones in his fingers or hand were fractured. A debridement was performed at the University of Iowa Hospital on his right index finger and the finger was wired and sutured. Upon his discharge from the hospital, seven days after the injury, his condition was diagnosed as a "fracture distal one-third proximal phalanx right index finger."

He later returned to work as a general laborer with no medical restrictions relating to the October 6 injury. On March 27, 1978, Stumpff's treating physician reported he found the injury to be a seventy-three percent permanent partial disability to his right index finger. His employer agreed to pay healing period and permanent partial disability benefits for Stumpff's 1976 injury based on the seventy-three percent loss to his index finger. He was awarded workers' compensation benefits for 22.55 weeks at the rate of $160 per week for the permanent partial disability.

From April 1978 to October 24, 1989 Stumpff was employed as a refrigeration technician. On October 24 he fell at work and fractured both of his wrists. As a result of the injury to his wrists his employment was terminated.

Stumpff filed a petition against the Second Injury Fund on October 10, 1991. He claimed he was entitled to benefits as a result of the combined injury to his right hand in 1976 and the injuries to his left and right wrists in 1989. The deputy industrial commissioner found there was no independent disability of the hand arising from the 1976 injury to the index finger. Consequently, the loss of use of his index finger failed to trigger the Fund's liability. On appeal the industrial commissioner affirmed and adopted the deputy's action. The commissioner rejected the argument that the loss to a finger establishes a loss to the hand for Fund purposes.

Stumpff filed a petition for judicial review challenging the commissioner's decision. The district court rejected the argument that the loss to Stumpff's finger qualified as a loss of the use of his hand and affirmed the commissioner's decision.

II. *Scope of Review.*

Iowa's Administrative Procedure Act, Iowa Code chapter 17A, governs our review. *See* Iowa Code § 86.26 (1989). We, like the district court, review contested case proceedings for errors at law. Although we give limited deference to the industrial commissioner's interpretation of the statutes governing the agency, the proper interpretation of the statutes is a question of law for the court. *See Second Injury Fund v. Braden,* 459 N.W.2d 467, 468 (Iowa 1990). When construing workers' compensation statutes our policy is to liberally construe the statutes in favor of the worker. *Second Injury Fund v. Hodgins,* 461 N.W.2d 454, 455 (Iowa 1990).

III. *Second Injury Fund.*

The outcome of this appeal is determined by our interpretation of the Second Injury Compensation Act codified at Iowa Code sections 85.63 through 85.69. The Act established the Fund for the purpose of encouraging the employment of disabled persons. *Second Injury Fund v. Bergeson,* 526 N.W.2d 543, 547 (Iowa 1995). As stated in *Bergeson:*

The employee must prove three things to trigger the liability of the Fund. First, that he or she has either lost, or lost the use of a hand, arm, foot, leg, or eye. Second, the employee sustained the loss, or loss of use of another such member or organ through a work-related, compensable injury. Third, there must be some permanent injury from the injuries. The prior loss does not have to be total.

*Id.* at 547–48 (citations omitted).

■ Here, our focus is upon the first requirement. It was derived from the statutory language of Iowa Code section 85.64 which provides in part "[i]f an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury...." The loss of use of a hand qualifies as a first, or prior, injury under the statute. *Second Injury Fund v. Neelans,* 436 N.W.2d 355, 357 (Iowa 1989).

Stumpff argues the common definition of the word "hand" includes fingers. He also identified medical records and other medical evidence in the record where the 1976 injury was referred to as "trauma to his right hand." Using the American Medical Association Guide, the treating physician found "the permanent physical impairment of the index finger is equal to seventy-three percent of that digit, which in turn is equal to eighteen percent of the hand." Stumpff urges the 1976 injury satisfies the statutory test.

■ Under our workers' compensation law, all scheduled injuries to specific members of the body are listed in Iowa Code section 85.34(2)(a)–(t). A specific scheduled disability is evaluated by the functional method. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 15 (Iowa 1993). "Functional disability is assessed solely by determining the impairment of the body function ... [and] is limited to the loss of physiological capacity of the body or body part." *Simbro v. Delong's Sportswear,* 332 N.W.2d 886, 887 (Iowa 1983).

■ The injury to an index finger and the injury to a hand are separately identified scheduled injuries. Iowa Code § 85.34(2)(b), (*l*). Obviously, the loss of a finger or thumb

does, to some extent, affect the hand. Likewise, the injury to the hand would affect the arm, and even the body as a whole. Where the Iowa legislature has explicitly provided for workers' compensation benefits based on the loss of a finger, there is no merit in arguing the schedule for loss of a hand should apply. As we have stated:

One of the major functions of our Workmen's Compensation Act is to provide prompt payment to a covered employee in the event of injury arising out of and in the course of employment. Such an award is necessitated by the statute upon the occurrence of a specific injury and is to be made in strict accordance with the payment schedule provided therefor. For such injuries the statute does not purport to repose discretionary power in the industrial commissioner.

*Blizek v. Eagle Signal Co.,* 164 N.W.2d 84, 85–86 (Iowa 1969). The "optimum remedial benefits of our own statute are attained by a strict adherence to the literal meaning of the words used." *Id.* at 87.

In other states where the workers' compensation statute provides classification of injuries similar to Iowa, it is generally held that the disability to the finger, and not a consequential disability to the hand, governs the compensation to be paid. *Herold v. Constructors, Inc.,* 201 Neb. 697, 271 N.W.2d 542, 544 (1978) (although medical testimony established the loss of a thumb caused a functional disability of twenty-five percent to the hand, compensation was limited to benefits allowed for the loss of the thumb); *see also Ken Lones Landscaping, Inc. v. J.B. Tucker,* 382 So.2d 1368, 1370 (Fla.Dist.Ct. App.1980) (where there is no evidence indicating that the employee suffered impairment to the hand that was greater than the usual hand impairment which results from a thumb injury, the disability rating is limited to scheduled compensation for injury to the thumb); *Nash v. Knoblock,* 381 So.2d 404, 406 (La.1980) (although partial loss of a finger will result in some percentage of loss of the hand, this fact does not defeat the application of scheduled benefits for loss of a finger).

■ The Iowa legislature chose to allow a hand injury to qualify as a first injury against the Fund but not allow an injury to a

finger to qualify. *See* Harry W. Dahl, *The Iowa Second Injury Fund—Time for Change,* 39 Drake L.Rev. 101, 119 (1989–1990) ("The first loss must be to one scheduled part named in the Iowa Act, that is, one arm, one hand, one foot, one leg, or one eye."). We think the industrial commissioner has correctly allowed recovery for a hand injury when the site of the injury is at the point where the bones of the finger connect to the bones of the hand (phalangeal-metacarpal joint), *Vogel v. Second Injury Fund,* File No. 925720, p. 2 (App. Decision April 30, 1993), and also has correctly denied benefits where only the finger was injured, *Clester v. Second Injury Fund,* File No. 990938, p. 3 (Arb. Decision February 2, 1994). This interpretation is consistent with the clear language of the statute and our prior cases. In the recent case of *Second Injury Fund v. Nelson,* 544 N.W.2d 258 (Iowa 1995), the claimant suffered a nonscheduled shoulder injury. He suggested the injury to his shoulder was also an injury to his arm. We rejected the suggestion that a shoulder injury that affects the arm is sufficient to make the Fund liable. *Nelson,* 544 N.W.2d at 269–70. Likewise, we reject Stumpff's argument that the injury to his finger should be treated as a loss or loss of use of his hand thus qualifying as a first injury for the purpose of Fund liability.

**AFFIRMED.**