# IN THE COURT OF APPEALS OF IOWA

No. 18-2055
Filed April 1, 2020

**MARTEN HUFFEY, SR.,**
Petitioner-Appellee,

**vs.**

**SECOND INJURY FUND OF IOWA,**
Respondent-Appellant,

**MAIL CONTRACTORS OF AMERICA, INC., and CHARTIS,**
Respondents-Appellants,

**ACE PROPERTY AND CASUALTY,**
Respondent.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

The Second Injury Fund and the employer appeal a judicial review order reversing in part and remanding to the workers' compensation commissioner. **AFFIRMED.**

Thomas J. Miller, Attorney General, and Sarah C. Brandt and Meredith C. Cooney, Assistant Attorneys General, for appellant Second Injury Fund of Iowa.

Kelsey J. Paumer of Prentiss Grant LLC, Omaha, Nebraska, for appellants Mail Contractors of America, Inc., and Chartis.

Matthew Milligan of Schott Mauss and Associates, PLLC, Des Moines, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

This appeal combines two challenges to the judicial review order remanding Marten Huffey's claim for benefits back to the workers' compensation commissioner. The Second Injury Fund contests the district court's reversal of the agency's finding that Huffey's 1999 right arm injury did not qualify as a first injury under Iowa Code section 85.64 (2018). His employer—Mail Contractors of America (MCA)—disputes the need to remand for the agency to decide whether Huffey's 2012 left knee injury arose as a sequela[1] of his 2011 right knee injury. Because the agency misinterpreted the law on the first issue and failed to consider a relevant matter on the second issue, we affirm the judicial review order.

## I.     Facts and Prior Proceedings

Huffey sought compensation from MCA for his work-related injuries.[2] Huffey also raised a claim against the Second Injury Fund. That claim required the agency to determine whether he suffered a qualifying first and second injury. *See* Iowa Code § 85.64.

Huffey's relevant work history starts in California, where he joined a trade union operating on Hollywood studio sets from 1973 through 1991. In that role, he drove camera trucks, motor homes, and fork lifts. In 1992, he moved home to Iowa, where he drove a school bus for three years. He returned to work in

---

[1] The workers' compensation commission has defined "sequela" as "an after effect or secondary effect of an injury." *Powers v. Trimark Physician's Grp.*, 2005 WL 8149431 (Iowa Workers' Comp. Comm'n) at *5 (Sept. 5, 2005).

[2] MCA had a different workers' compensation insurer providing coverage at the time of each injury. The causation and impairment determinations for each injury will control which entity is responsible for the benefits.

California during 1995 and 1996. And then in 1997 he took a job as a truck driver for MCA, based in Des Moines. That employment lasted sixteen years.

As a semi-truck driver for MCA, Huffey transported mail, often on a designated route. The job required loading and unloading with or without freight-handling equipment. The duties required occasional bending, twisting, climbing, squatting, crouching, and balancing. Huffey also had to push or pull a minimum of 100 pounds and sit for prolonged periods. On average, Huffey would spend 60% to 80% of his time in the truck. And he was responsible for the maintenance of the truck.

Over the years, Huffey suffered many mishaps on the job. The table below summarizes the relevant injuries.

| Injury Date | Body Part | Explanations | File No |
|---|---|---|---|
| July 1994 | Left knee | Received surgery and was placed at maximum medical improvement (MMI) within one year | |
| October 1999 | Right arm and right wrist (strapping lumber to truck) Rated at 7% impairment | Underwent two surgeries and returned to work with no restrictions in March 2000 | |
| July 2003 | Left knee (stepping off truck bumper) | Left knee surgery (MCA is employer) | 5042766 |
| March 2011 | Right knee alleged left knee sequela (hit knee while exiting truck) | Right knee surgery (MCA is employer) | 5042767 |
| February 2012 | Left knee (jumping out of truck) | Reached MMI and returned to work on March 2012. (MCA is employer) | 5042768 |
| January 2013 | Left knee surgery | Dr. Mahoney performed total knee replacement. (MCA is employer) | |

We focus first on Huffey's 2003 left knee injury. In an earlier workers' compensation case, assigned file number 5042766, the commissioner considered whether that 2003 injury led to Huffey's 2013 total left knee replacement. The commissioner held the surgery related instead to Huffey's 2012 left knee injury so the worker could not recover for the 2003 work injury. Huffey did not appeal that decision.

Eight years after the 2003 left knee injury, Huffey hit his right knee while exiting his truck. Huffey argued the right knee injury entitled him to permanent partial disability benefits. He also claimed the right knee injury led to a sequela injury to the left knee that caused permanent disability. The commissioner assigned file number 5042767 to this claim. Dr. Patrick Sullivan performed a right knee medial meniscectomy in May 2011. After that procedure, Dr. Sullivan placed Huffey at MMI in June 2011 and imposed a 2% permanent impairment rating. As for the left knee, Dr. Sullivan noted Huffey's progressive pain and discomfort resulted from degenerative arthritis.

Huffey's expert witness, Dr. Robin Sassman, had a different opinion. After she performed an independent medical examination (IME), she assigned a 7% impairment rating for the right knee. Dr. Sassman also opined Huffey's left knee problems resulted from changes in his gait caused by the pain and swelling of the right knee. Dr. Sassman opined both the 2011 sequela and the 2012 work injury accelerated the need for the total left knee replacement in 2013.

The deputy commissioner accepted Dr. Sassman's 7% impairment rating on the right knee. But the arbitration decision also found Huffey failed to demonstrate a sequela injury to his left knee. The deputy commissioner found

Dr. Sullivan's opinion more persuasive on the sequela issue because he was treating Huffey at that time. By contrast, Dr. Sassman based her opinion on an IME performed three years later. In the appeal of the arbitration decision, the commissioner failed to directly address whether the right knee injury caused a sequela injury to the left knee that caused permanent and total disability.

The third file, number 5042768, corresponds to Huffey's left knee injury incurred in February 2012. After this work injury, Huffey received treatment from Dr. Daniel Miller. Dr. Miller prescribed work restrictions and pain medication. Dr. Miller then cleared Huffey to return to work in March 2012. When his left knee pain persisted, Huffey sought treatment from Dr. Craig Mahoney in November 2012. Dr. Mahoney performed a total left knee replacement in January 2013.

That same month, Huffey applied for short-term disability benefits. Huffey advanced the opinion of Dr. Sassman that his February 2012 work injury aggravated the underlying degenerative changes and accelerated the need for the left total knee replacement. Dr. Sassman found a 20% impairment to the left knee. By contrast, Dr. Miller opined the February 2012 injury "did not contribute or cause his need for the left total knee replacement in January 2013."

The deputy commissioner accepted Dr. Sassman's opinion that the February 2012 injury "lit up" and accelerated the left knee condition so Huffey required left knee replacement sooner than he otherwise would have. The deputy commissioner's arbitration decision concluded Huffey was entitled to permanent disability benefits at a 50% impairment rating. The commissioner reversed that determination. The commissioner's appeal decision held Huffey failed to carry his burden to show a permanent disability from the February 2012 work injury.

As for the Second Injury Fund, Huffey claimed his first injury was to his right arm in 1999 and his second injury was to his right knee in March 2011. Rather than address the 1999 injury, the deputy commissioner treated the March 2011 right knee incident as the first injury and the February 2012 left knee incident as the second injury. On appeal from that arbitration decision, the commissioner agreed the March 2011 right knee incident was one qualifying injury, but the commissioner declined to treat the February 2012 left knee event as a second injury or the 1999 right arm event as a first injury.

Huffey petitioned for judicial review. The district court decided the commissioner "erred as a matter of law because he relied on industrial factors not required to determine a first qualifying injury." The district court also remanded for the agency to address the sequela question. The Fund and MCA both appeal.

## II. Scope and Standards of Review

When deciding a judicial review petition, the district court acts in an appellate capacity. *Mike Brooks, Inc. v. House,* 843 N.W.2d 885, 888 (Iowa 2014). So, in what is essentially a second appeal, we apply Iowa Code chapter 17A standards to decide whether we reach the same conclusions as the district court. *Id.* "If we reach the same conclusions, we affirm; otherwise we may reverse." *Id.* (quoting *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013)).

We review the two questions raised here under the standards described in Iowa Code section 17A.19(10). *See* Iowa Code § 86.26; *Gregory v. Second Injury Fund of Iowa*, 777 N.W.2d 395, 397 (Iowa 2010). The parties disagree on which subparagraph governs. The Fund contends we apply the substantial-evidence

standard under section 17A.19(10)(f) to the question of eligibility. The employer argues we review the remand decision on the sequela question for an abuse of discretion, citing subparagraphs (i) and (j). For his part, Huffey relies on subparagraph (m) because he believes the questions on appeal involve the application of law to fact.

We have yet a different view. In the Fund's appeal, the agency's decision hinged on an interpretation of Iowa Code section 85.64. The legislature did not clearly vest the power to interpret that statute with the commissioner. *See Finch v. Schneider Specialized Carriers, Inc.,* 700 N.W.2d 328, 330 (Iowa 2005). We are free to substitute our judgment if the agency's decision is based on "an erroneous interpretation" of the law. Iowa Code § 17A.19(10)(c); *Second Injury Fund of Iowa v. Kratzer,* 778 N.W.2d 42, 45 (Iowa 2010).

We apply another standard when the commissioner fails to consider all of the evidence. *See JBS Swift & Co. v. Hedberg*, 873 N.W.2d 276, 280 (Iowa Ct. App. 2015). On MCA's appeal, we assess if the agency's action was illogical or irrational. *See* Iowa Code § 17A.19(10)(i), (j).

### III.  Analysis

### A.  Second Injury Fund's Appeal

We construe the workers' compensation statute in favor of the worker. *See Holstein Elec. v. Breyfogle*, 756 N.W.2d 812, 816 (Iowa 2008). That construction remains true for the second injury fund compensation act—codified at Iowa Code sections 85.63 through 85.69. Through that act, the legislature encourages the employment of workers with disabilities. *See Stumpff v. Second Injury Fund of Iowa*, 543 N.W.2d 904, 905 (Iowa 1996).

To establish a claim against the fund, Huffey had to prove by a preponderance of the evidence that (1) he lost or lost the use of a hand, arm, foot, leg, or eye; (2) he sustained a loss or loss of use of another specified member or organ through a compensable work-related injury; and (3) both injuries resulted in permanent disability. *See* Iowa Code § 85.64; *Anderson v. Second Injury Fund*, 262 N.W.2d 789, 790 (Iowa 1978).

The fund is responsible for the difference between the disability caused by the current employment and the employee's total disability. *Second Injury Fund of Iowa v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994). There are two ways to evaluate a disability: functional and industrial. *Id.* at 813. A functional disability involves "determining the impairment of the employee's body function and is limited to the loss of the physiological capacity of the body or body part." *Id.* An "[i]ndustrial disability goes beyond body impairment and measures the extent to which the injury impairs the employee's earning capacity." *Id.* A functional disability is one factor in determining industrial disability, but other factors include "the employee's age, education, qualifications, experience, and the ability of the employee to engage in employment for which the employee is fit." *Id.*

Like the district court, we zero in on the agency's rationale:

Claimant had a right arm injury in 1999. Other than claimant's testimony, there is no evidence claimant had surgery for this injury. Claimant was returned to work with no restrictions for this injury in 2000. Claimant worked a number of years performing heavy manual labor with no restrictions to his right arm. There is no record claimant had difficulty doing this work with his right arm. Dr. Sassman's opinion regarding permanent impairment to the right arm is found not convincing. Given this record, claimant has failed to prove he had an injury to his right arm in 1999 that qualifies him for Fund benefits.

In short, the agency denied Huffey's request for compensation from the fund for two reasons: (1) the lack of medical records to document the 1999 injury and (2) the failure to show an industrial loss from that injury. We find legal error in both reasons.

First, the Fund points to no code provisions that require Huffey to present medical documentation of his 1999 injury. *See Block v. Second Injury Fund of Iowa*, File No. 5044550, 2015 WL 5547632, at *5 (Iowa Workers' Comp. Comm'n Sept. 16, 2015) (holding absence of medical records did not defeat claim against the fund). The agency could rely on Huffey's own testimony, as well as the corroborative discussion of the 1999 surgery in his medical records, to establish the qualifying first injury.

Second, to invoke fund liability, the first injury need not cause an industrial disability. *See Second Injury Fund of Iowa v. Braden*, 459 N.W.2d 467, 470 (Iowa 1990) (explaining the first injury need only be a scheduled injury). The legislature intended the agency to identify a scheduled injury by the loss of physiological capacity of the body part and not by evaluating the impairment of earning capacity. Thus the first injury does not have to result in an industrial disability to constitute a "loss of use" under section 85.64. *Id.*

Huffey contends the agency misinterpreted section 85.64 in requiring the "loss of use" of a qualifying body part (for the first injury) be measured by industrial-disability factors and not just the loss of physiological capacity. For instance, the commissioner emphasized Huffey returned to work with no restrictions in 2000. And the commissioner noted Huffey could perform "heavy manual labor" for many years despite his 1999 right arm injury.

The district court accepted Huffey's contention and held the agency improperly required the first qualifying injury to have "an industrial impact." In reviewing the agency's interpretation of statutory language, we "reserve for ourselves the final interpretation of the law." *See Second Injury Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 546 (Iowa 1995). Like the district court, we conclude the agency wrongly interpreted the law when assessing the requirements for proof of a valid first loss.

Whether Huffey satisfied the third element of a section 85.64 claim—that the cumulative effect of his two scheduled injuries created permanent disability— remains to be decided. We leave that question to the commissioner on remand to the agency.

## B. MCA's Appeal

In seeking benefits for a permanent disability under section 85.34(2), Huffey asserted he suffered a sequela injury to his left knee as a result of his March 2011 right knee injury. On appeal, MCA argues the district court erred in remanding for the agency to determine whether the conflicting evidence supported Huffey's claim. The employer concedes the commissioner did not "specifically discuss" the possibility of a sequela injury. But MCA maintains we can "deduce" from the commissioner's overall analysis that the agency considered, and rejected, that possibility.

Huffey suggests the commissioner mistook his sequela argument as an attempt to qualify for section 85.64 benefits. He contends it is "impossible to deduce" the commissioner's thinking when he "missed the mark on Huffey's

alternative argument." We agree with Huffey that the commissioner's approach to this particular question was irrational and illogical.

Like the district court, we believe a remand is necessary for the agency to evaluate the conflicting expert testimony on the sequela issue. *See Hedberg*, 873 N.W.2d at 281 (finding remand to agency was appropriate remedy when commissioner failed to consider all the evidence). On one hand, Dr. Sullivan believed Huffey's left knee injury stemmed from degenerative arthritis. On the other hand, Dr. Sassman opined Huffey's left knee problems were aggravated in part because of the gait changes caused by the pain and swelling of the right knee. On remand to the agency, the commissioner should directly decide Huffey's claim that the March 2011 injury caused permanent and total disability because of a left knee sequela injury under section 85.34(2).

**AFFIRMED.**