**IN THE COURT OF APPEALS OF IOWA**

No. 19-1759
Filed July 21, 2021

**LOREN LEE PESICKA, JR.,**
        Plaintiff-Appellant,

**vs.**

**SNAP-ON LOGISTICS COMPANY, a/k/a SNAP-ON TOOLS MANUFACTURING COMPANY,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        A worker appeals from a district court order that affirmed the decision of the

Iowa Workers' Compensation Commissioner in part.  **AFFIRMED.**


        Mark S. Soldat of Soldat & Parrish-Sams, PLC, West Des Moines, for

appellant.

        Joni L. Ploeger of Dentons Davis Brown, P.C., Des Moines, for appellees.


        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

After receiving an unfavorable outcome in proceedings before the Iowa Workers' Compensation Commission, Pesicka filed a petition for judicial review. The district court affirmed the commissioner's decision in part. Pesicka appeals from the district court ruling and argues: (1) the commission erred by awarding less permanent disability than the legislature mandated; (2) the commissioner erred by awarding permanent disability compensation based upon only objective evidence; and (3) the commissioner erred by reducing reimbursement of an independent medical examination (IME) fee.

We affirm the district court's decision that determined Pesicka was prevented from altering the previously agreed upon situs of injury and stipulation at hearing on his review-reopening petition. As such, we reject Pesicka's permanent partial disability compensation argument. We find Pesicka's assertion that the district court erred in considering evidence only of objectively manifested impairments to be contradicted by the record. Further, to the extent Pesicka's argument raises a claim that the commissioner's review-reopening decision is unsupported by substantial evidence, we disagree. Finally, we affirm the reduction of reimbursement for an IME due to the examination's dual purpose.

## I.	Background and Procedural History

Pesicka was injured on October 3, 2002, when a piece of metal fell on his right foot during employment at Snap-On Logistics Company (Snap-On). Pesicka filed an injury report seeking workers' compensation benefits. In December 2006, by which time Pesicka had undergone three surgeries as a result of his injury, Pesicka and Snap-On entered into a settlement agreement pursuant to Iowa Code

section 85.35(2) (2006).[1] In the settlement agreement, the parties agreed there was a thirteen percent permanent partial disability to the right leg, resulting in 28.6 weeks of compensation under Iowa Code section 85.34(2)(o).[2]

Following the settlement, Pesicka underwent eight additional surgeries. As relevant to this appeal, Pesicka had surgery on January 5, 2012, that resulted in amputation of the third, fourth, and fifth toes on his right foot. In February 2015, Pesicka filed a petition for review-reopening relief pursuant to section 86.14 seeking an increase in benefits, asserting that his right leg condition had worsened.[3] He then had an additional surgery on October 21, 2015, resulting in the amputation of the remaining two toes on his right foot.

On February 2, 2016, Dr. John Kuhnlein conducted an IME of Pesicka that resulted in his April 19 report. In the IME report, Dr. Kuhnlein opined that Pesicka's original right foot condition "never fully recovered, and progressed . . . leading to the amputations." Dr. Kuhnlein rated Pesicka's impairment as "an overall thirty-six percent right foot impairment." He then determined that the impairment amounted

---

[1] Section 85.35(2) provides, "The parties may enter into an agreement for settlement that establishes the employer's liability, fixes the nature and extent of the employee's current right to accrued benefits, and establishes the employee's right to statutory benefits that accrue in the future."

[2] This award issued under section 85.34(2)(v), which provides:

> If it is determined that an injury has produced a disability less than that specifically described in the schedule described in paragraphs "a" through "t", compensation shall be paid during the lesser number of weeks of disability determined, as will not exceed a total amount equal to the same percentage proportion of said scheduled maximum compensation.

[3] Section 86.14 provides, "In a proceeding to reopen an award for payments or agreement for settlement as provided by section 86.13, inquiry shall be into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon."

to "a twenty-five percent right lower extremity impairment." Dr. Kuhnlein also opined in the IME report that Pesicka had a five-percent impairment to the left knee as a result of injuries not involved in this case.[4]

On May 18, 2016, the deputy commissioner conducted a hearing on Pesicka's reopening petition. At the hearing, the parties presented a hearing report pursuant to Iowa Administrative Code rule 876-4.19(3)(f). The report recited that the disability is a scheduled member disability to the right leg. Prior to accepting the hearing report, the deputy received statements from Pesicka's counsel to the effect that Pesicka's claim in the review-reopening action included an assertion that he should receive a minimum of 100 weeks of compensation due to the valuations provided for the loss of toes in the list of scheduled members codified at section 85.34(2). However, Pesicka did not move to amend his petition or the stipulation prior to hearing to alter the situs of his injury agreed to as part of the initial settlement and permanency to the right leg.

The deputy issued a decision on January 20, 2017, finding Dr. Kuhnlein "has clearly taken into consideration the amputation of claimant's toes when assessing the functional impairment and considered the same to be related to the original injury." Based on Dr. Kuhnlein's determination that Pesicka had a twenty-five percent impairment in the leg, the deputy also found as follows:

> [C]laimant has sustained a twenty-five percent functional loss to the right lower extremity, which is equivalent to fifty-five weeks of permanent partial disability benefits.

---

[4] The issues concerning Pesicka's right knee were resolved as part of a second injury claim.

I have found above that defendant has paid 57.5 weeks of permanent partial disability benefits since 2006. Claimant takes no additional permanent partial disability benefits.

Pesicka filed for rehearing. In the rehearing decision, the deputy addressed Pesicka's claim that 100 weeks of compensation were owed for the amputation of the right five toes. The deputy observed that the petition filed on February 12, 2015, stated the body part affected was claimant's right leg, "which is Iowa Code section 85.34(2)(o)."[5]

Pesicka appealed to the commissioner. The commissioner reduced the reimbursement for Pesicka's IME, reasoning that because the examination was also used to evaluate the left knee for a claim against the Second Injury Fund, Snap-On should only be required to pay half the cost of the IME. Pesicka filed a rehearing application. The commissioner rejected the arguments in the rehearing application.

Pesicka sought judicial review of the commissioner's decision. The district court affirmed the commissioner's ruling in part.[6] Pesicka filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The court denied the motion, finding the claimant's motion "merely restates the prior legal and factual assertions made by the Petitioner in his briefing and arguments made both to this Court and to the underlying Agency." Pesicka appeals.

---

[5] Effective July 1, 2017, former paragraph (o) is now codified at paragraph (p). *See* 2017 Iowa Acts ch. 23, § 7. Both versions contain the same text: "The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the compensation therefor shall be weekly compensation during two hundred twenty weeks."

[6] The case was remanded for a determination of healing period benefits, which is not an issue on appeal.

## II. Standard and Scope of Review

We review contested proceedings under the workers' compensation statutes for correction of errors at law. *Stumpff v. Second Inj. Fund*, 543 N.W.2d 904, 905 (Iowa 1996).

> Although we give limited deference to the industrial commissioner's interpretation of the statutes governing the agency, the proper interpretation of the statutes is a question of law for the court. When construing workers' compensation statutes our policy is to liberally construe the statutes in favor of the worker.

*Id.* (citation omitted).

## III. Permanent Partial Disability Compensation

Because Pesicka had all five toes on the right foot amputated prior to the hearing on his petition for review-reopening, he contends he should receive a minimum of 100 weeks of partial permanent disability compensation, as section 85.34(2) allows for forty weeks for the loss of the great toe and fifteen weeks each for the loss of the other toes. The deputy commissioner, the commissioner, and the district court all found that as the previous settlement was for his right leg and the stipulation in the hearing report was that the injury was to the right leg, Pesicka was unable to claim an award under the paragraphs of section 85.34(2) pertaining to the loss of toes. We agree.

Under agency rule, a claimant's compensation for permanent partial disability may be determined by reference to guides published by the American Medical Association (AMA).[7] *See* Iowa Admin. Code r. 876-2.4 (2016) ("The Guides to the Evaluation of Permanent Impairment, Fifth Edition, published by the

---

[7] The legislature has since amended the Iowa Code to explicitly auothorize use of the AMA guides. *See* 2017 Iowa Acts ch 23, § 6 (codified at Iowa Code § 85.34(2)).

American Medical Association are adopted as a guide for determining permanent partial disabilities under Iowa Code section 85.34(2) . . . . The extent of loss or percentage of permanent impairment may be determined by use of the Fifth Edition of the guides and payment of weekly compensation for permanent partial scheduled injuries made accordingly."). Consistent with this rule, Dr. Kuhnlein utilized the AMA guides in reaching his determination that Pesicka had a twenty-five percent right-lower-extremity impairment, which was then adopted by the commissioner.

Although the agency has encouraged the use of the AMA guides for determining "the extent of loss or percentage of permanent impairment," the legislature has also mandated fixed amounts of compensation for the loss of specified scheduled members of the body. The compensation for scheduled members is set out in the paragraphs under section 85.34(2). As relevant to this appeal, Iowa Code section 85.34(2)(h) and (i) pertain to the toes, and section 85.34(2)(o)—relocated to section 85.34(2)(p) in 2017—pertains to the leg:

> h. For the loss of a great toe, weekly compensation during forty weeks.
> i. For the loss of one of the toes other than the great toe, weekly compensation during fifteen weeks.
> . . . .
> o. The loss of two-thirds of that part of a leg between the hip joint and the knee joint shall equal the loss of a leg, and the compensation therefor shall be weekly compensation during two hundred twenty weeks.

Because the loss of the leg results in 220 weeks of compensation, Pesicka's twenty-five percent impairment, as determined by Dr. Kuhnlein and adopted by the

commissioner, resulted in an award of fifty-five weeks of compensation.[8]  *See* Iowa Code § 85.34(v).

Pesicka's argument on appeal is that the tribunals below failed to resolve what he alleges to be a conflict between the legislature's valuation of a total loss of the five toes on his right foot and the valuation of the impairment to his leg. Since Pesicka's great toe and the four remaining toes on his right foot were amputated, he claims he should receive a minimum of 100 weeks, calculated as forty weeks' compensation due to the loss of the great toe pursuant to paragraph (h) and an additional sixty weeks for the remaining toes, which individually account for fifteen weeks each pursuant to paragraph (i).  Pesicka is bound by the previous settlement and written stipulation that the injury was to the right leg. Pesicka received fifty-five weeks of compensation.

The hearing report submitted to the deputy commissioner at the hearing on the review-reopening petition contained the stipulation that "the disability is a scheduled member disability to the right leg."  "We attempt to determine and give effect to the parties' intentions when construing the parties' stipulation of fact." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 656 (Iowa 2013).

> However, we cannot consider the hearing report in a vacuum. We must consider the stipulation "with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved." Accordingly, we consider the colloquy between the deputy and the attorneys, the manner in which the parties conducted the trial, and the understanding of the deputy as to the issues.

---

[8] The parties do not dispute on appeal that Pesicka has been paid 57.5 weeks of permanent partial disability benefits since 2006.

*Id.* at 656–57 (citations omitted). Iowa courts "recognize[ ] that opposing sides may put different interpretations on a stipulation." *Graen's Mens Wear*, *Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983). "If [a] stipulation contained in the hearing report is binding, we must consider if the parties, due to their colloquy with the deputy and the evidence introduced at the hearing, abandoned the stipulation in the hearing report." *Staff Mgmt.*, 839 N.W.2d at 656.

Here, the following exchange took place at the hearing prior to the court's acceptance of the hearing report and its stipulations:

> Pesicka's Counsel: You had asked a question earlier, maybe off the record, I'm not sure, about whether there was an impairment rating for sixty percent, and I guess you should understand that claimant's position is not based on impairment ratings alone. For one thing, under [section 85.34(2)(h) and (i)], we allege that since all five toes have been amputated, there's 100 weeks just to start out with.
> Deputy Commissioner: Let me just state that since that was a discussion held off the record. I did inquire looking at the hearing report the [partial permanent disability] entitlement, and my question was because—this may sound silly at this point, but my question was because the writing was above that paragraph, was it something there associated with [temporary total disability] and healing period or was it in the [partial permanent disability], so that was my report: Do we have two reports of twenty-five [percent] and sixty [percent], that was my question.
> Pesicka's Counsel: Okay.
> Deputy Commissioner: If there's nothing further, then I'll sign the hearing report that's been done.

The deputy commissioner accepted the hearing report—which contained the stipulation that the injury was to the right leg.

In addition to considering the colloquy at the hearing, we examine the "surrounding circumstances." *See Graen's Mens Wear*, 329 N.W.2d at 300. The petition indicates that the parties disputed the extent of disability and compensation. In Pesicka's petition, he acknowledged that the "part[ ] of body

affected or disabled" was the "[r]ight *leg.*" (Emphasis added.) He continued to request at hearing a sixty percent permanent impairment for the loss of the right leg.

Considering together the colloquy, hearing report, and petition, we find the stipulation precludes an award for the loss of the toes as a separate determination from Pesicka's right leg. *See Staff Mgmt.*, 839 N.W.2d at 656–57 (considering "the understanding of the deputy as to the issues"). In a prior case, we held it was error for the commissioner to disregard a stipulation beneficial to the claimant because it did so without giving the claimant prior notice. *See Indianola Cmty. Sch. Dist. v. Allen*, No. 05-0038, 2006 WL 228944, at *4–5 (Iowa Ct. App. Feb. 1, 2006). The parties stipulated that the injury occurred in the course of employment, and that stipulation was disregarded by the commissioner without opportunity for the claimant to prove the truth of the stipulated matter. *Id.* at *2–4. Here, Snap-On did not have adequate notice of a need to dispute the level of impairment to the right leg, the right foot, and the right five toes. The impairment rating assigned to Pesicka's right leg was based in part on impairments in the foot and the amputations of his toes. Snap-On would be prejudiced by disregard of the stipulation.

Importantly, the previous settlement that was the subject of the re-opening petition was for Pesicka's right leg. The district court stated, "[T]his is a review-reopening action, as such, the situs of the injury must necessarily be that as was the subject of the underlying action: the right leg. The parties' settlement as to the situs of the injury was approved, constituting judicial acceptance of an injury to the right leg." The court added, "Claimant is now estopped from attempting to claim a

different injury," citing *Wilson v. Liberty Mutual Group*, 666 N.W.2d 163, 166–67 (Iowa 2003) and *Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 196–99 (Iowa 2007).

To the extent we were to consider Pesicka's claim that he was entitled to an award based on a combination of losses, Pesicka cites no case law supporting this proposition under Iowa Code section 85.34(2)(h), (i), or (j) when all are allegedly mandatory.[9]  Generally, when an injury extends into the leg, all potential injuries to the parts of the leg (toes, foot, knee) can be included in the assessment of permanency to the leg.  *E.g.*, *Klopping v. Weiser Precast, Inc.*, File No. 5030039, 2010 WL 2482272, at *5–6 (June 16, 2010) (Iowa Workers' Comp. Comm'n) (noting the claimant had a toe amputated, deformities of other toes, loss of range of motion in the foot, osteomyelitis in the lower extremity, and scarring of the ankle; the claimant was awarded permanency under section 85.34(2)(o) (leg)).  If an injury extends beyond a scheduled member into another scheduled member, or the body as a whole, an award is made based on the schedule member statute with more weeks, the bilateral schedule, or industrial disability section.  *Id.*; *McIntosh*, 395 N.W.2d at 837–39 (finding a hip injury was to the body as a whole, not the leg).

---

[9] We note that Pesicka asserts this case is one of first impression as to whether less permanent partial disability compensation can be awarded for a total loss of a scheduled member than the amount mandated by the legislature.  Snap-On asserts Pesicka's interpretation of the law would result in "a rupturing of the conceptual tidiness which is said to be the very essence of the scheduled-injury approach," citing *Lauhoff Grain Co. v. McIntosh*, 395 N.W. 2d 834, 837–40 (Iowa 1986).

## IV. Refusal to Give Weight to Subjective Evidence

Pesicka's second argument on appeal contends that the commissioner erred by awarding permanent disability compensation without basing his decision on the impairments that manifested subjectively instead of objectively, such as pain and tiring in the foot after a period of continuous usage. Pesicka asks that we reverse and remand the case so the commissioner can consider evidence of his subjectively manifested impairments.

"The law requires the commissioner to consider all evidence, both medical and nonmedical, in arriving at a disability determination." *Terwilliger v. Snap-On Tools Corp.*, 529 N.W.2d 267, 273 (Iowa 1995). This requirement extends to testimony of lay witnesses. *See Miller v. Lauridsen Foods, Inc.*, 525 N.W.2d 417, 421 (Iowa 1994) ("Lay witness testimony is both relevant and material upon the cause and extent of injury.").

Here, the deputy commissioner considered the testimony of lay witnesses, including from Pesicka himself, as well as from his wife, his father, and his daughter. Pesicka and these three family members testified to subjectively manifested impairments. The deputy commissioner mentioned testimony related to Pesicka's troubles with driving, sitting, walking, balancing, overtiring, increased sensitivity, phantom pain, and decreased agility. The commissioner adopted the deputy's factual findings. We do not find that the deputy or commissioner failed to consider lay evidence of subjectively manifested impairments, and we, therefore, reject Pesicka's argument that the commissioner failed to "consider all evidence." *See Terwilliger*, 529 N.W.2d at 273.

To the extent Pesicka argues the review-reopening decision was unsupported by substantial evidence, we disagree. When reviewing an agency's findings of fact for substantial evidence,

> the adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it.

Iowa Code § 17A.19(10)(f)(3). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1).

> Evidence is not insubstantial merely because different conclusions may be drawn from the evidence. To that end, evidence may be substantial even though we may have drawn a different conclusion as fact finder. Our task, therefore, is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made.

*Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (citations omitted).

Employing these standards, we find the deputy's decision supported by substantial evidence. While the deputy had the option of providing more credit to the testimony of Pesicka's family members, he instead found the testimony of the parties' experts more convincing. "The commissioner, as the fact finder, determines the weight to be given to any expert testimony." *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). The commissioner is entitled to give greater weight to expert testimony than to lay testimony. *See Terwilliger*, 529

N.W.2d at 272 ("It is clear that the commissioner engaged in a weighing of the evidence in the record and held that the medical testimony outweighed the lay testimony."). The deputy remarked,

> Lay testimony of functional loss was provided by the witnesses. The undersigned has considered this testimony relating to the extent of functional loss along with the remaining evidence, including the expert opinions and determined that, for the reasons stated above, the impairment rating assigned by Dr. Kuhnlein of twenty-five percent permanent impairment to the right lower extremity is the most persuasive and I have accepted the same.

The commissioner affirmed the deputy's findings. We find the testimony of medical experts provides substantial evidence to support the deputy's decision.

## V.     Reducing Reimbursement for IME

Pesicka's third argument on appeal takes issue with the commissioner's decision to reduce the deputy's award for reimbursement of costs associated with the IME. The deputy awarded full reimbursement for the IME, but the commissioner reduced the award by half due to the IME having dual purposes.

Pesicka argues the commissioner committed an abuse of discretion by adjusting IME reimbursement. *See* Iowa Code § 17A.19(10)(n). "An abuse of discretion occurs when the commissioner's exercise of discretion is 'clearly erroneous or rests on untenable grounds.'" *IBP, Inc. v. Burress*, 779 N.W.2d 210, 214 (Iowa 2010) (citation omitted).

In reducing the deputy's grant of reimbursement for the cost of the IME by half, the commissioner said,

> As detailed in Dr. Kuhnlein's April 2016 report, and as noted in defendant's brief, Dr. Kuhnlein also reviewed medical records and examined claimant for a left knee injury for purposes of claimants Second Injury Fund (Fund) claim. It is unreasonable that defendant be required to pay for an IME concerning claimant's Fund claim. For

that reason, defendant is only liable for half of the cost of Dr. Kuhnlein's IME, or $2,660.95 ($5,321.90 x .50).

Pesicka concedes the IME report contained information pertaining to his left knee. He alleges this information constituted merely twenty percent of the pages of the report and, therefore, the reduction of IME reimbursement by fifty percent was an abuse of discretion.

We find there was no abuse of discretion in the commissioner's reduction of reimbursement to fifty percent. While we agree that more than fifty percent of Dr. Kuhnlein's report was devoted to issues related to the right leg, we disagree that this imbalance makes the commissioner's reimbursement reduction an abuse of discretion. Neither the exam itself nor Dr. Kuhnlein's written report are easily divided into quantifiable sections. The commissioner's decision to reduce the IME reimbursement by half fairly approximates the reality that the IME was used for two purposes. As such, the reduction was not an abuse of discretion.

## VI.  Conclusion

We affirm the district court's decision, which affirmed the deputy commissioner's award of a twenty-five percent right-lower-extremity impairment following a review-reopening petition. We find no abuse of discretion in the decision to reduce reimbursement for the IME fee, and we reject Pesicka's argument regarding evidence of subjectively manifested impairment. Costs on appeal, if any, are assessed to Pesicka.

**AFFIRMED.**